UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JACQUELINE SMITH,

             Plaintiff,

v.                               Case No. 12-14311

NORTHSTAR DINING
CHESTERFIELD, LLC, et al.,        HON. TERRENCE G. BERG
                                   HON. MICHAEL J. HLUCHANIUK

             Defendants.

_____/

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGEMENT**

Plaintiff Jacqueline Smith brought suit against her former employer,

Defendants Northstar Dining Chesterfield, LLC and Northstar Restaurants, LLC

on September 27, 2012 alleging that she was forced to work "off the clock" without

compensation in violation of the Fair Labor Standards Act, 29 U.S.C.A. § 201, et

seq. (the "FLSA") and that she suffered religious discrimination and retaliation in

violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C.A § 2000e, et seq.

("Title VII") and Michigan's Elliott-Larsen Civil Rights Act, MCLA 37.2101, et seq.

(the "ELCRA").

On December 6, 2013, Defendants moved for summary judgment on all of

Plaintiff's claims (Dkt. 18). Plaintiff filed a response (Dkt. 21) and Defendants filed

a reply (Dkt. 22). The Court heard oral argument on February 10, 2014. Upon

careful review and consideration of the pleadings, supporting briefs and oral

arguments, the Court finds that there are disputed issues of material fact regarding

Plaintiff's unpaid wages claim under the FLSA and Plaintiff's retaliation claims under Title VII and the ELCRA. However, summary judgment may be entered on Plaintiff's religious discrimination claims under Title VII and the ELCRA because Plaintiff has not submitted any evidence showing that Defendants were motivated or influenced by Plaintiff's religion when making employment decisions. Accordingly, it is ORDERED that Defendants' motion for summary judgment (Dkt. 18) is GRANTED IN PART and DENIED IN PART.

## I.    FACTUAL BACKGROUND

As a preliminary matter, the Court notes that neither Defendants nor Plaintiff followed the Court's practice guidelines for motions for summary judgment that are available on the Court's website. These practice guidelines provide as follows:

> A Rule 56 motion must begin with a "Statement of Material Facts." Such a Statement is to be included as the first section of the Rule 56 Motion. The Statement must consist of separately numbered paragraphs briefly describing the material facts underlying the motion, sufficient to support judgment. Proffered facts must be supported with citations to the pleadings, interrogatories, admissions, depositions, affidavits, or documentary exhibits. Citations should contain page and line references, as appropriate....  The Statement of Material Facts counts against the page limit for the brief. No separate narrative facts section shall be permitted.
>
> The response to a Rule 56 Motion must begin with a "Counter-statement of Material Facts" stating which facts are admitted and which are contested. The paragraph numbering must correspond to moving party's Statement of Material Facts. If any of the moving party's proffered facts are contested, the non-moving party must explain the basis for the factual disagreement, referencing and citing record evidence.  Any proffered fact in the movant's Statement of Material Facts that is not specifically contested will, for the purpose of the motion, be deemed admitted. In similar form, the counter-statement may also include additional facts, disputed or undisputed, that require a denial of the motion.[1]

[1] Available at -- http://www.mied.uscourts.gov/Judges/guidelines/topic.cfm?topic_id=459

Both Defendants' motion for summary judgment and Plaintiff's response included separate narrative fact sections in violation of the Court's practice guidelines. While Defendants' "Statement of Facts" was not organized in separately numbered paragraphs, Plaintiff's response omitted the "Counter-statement" and included a "Statement of Facts" that did not correspond to Defendants' statement. Without a statement and counter-statement, the parties fail to identify clearly which material facts are subject to dispute.[2] The Court nonetheless conducted a thorough review of parties' briefs, oral arguments, and exhibits and gleaned the following facts, which are viewed in a light most favorable to Plaintiff as the non-moving party.

Plaintiff, a Baptist, was employed by Defendants from September 2009 through July 2012 at an Arby's fast food restaurant. (Dkt. 21, Ex. 1; Dkt. 18, Ex. A.) Plaintiff began work as a crewmember but was later promoted to shift manager in February 2010. (Dkt. 21, Ex. 2 at ¶¶ 2, 7.) When Plaintiff initially applied, she noted that she was available to work any shift from Monday through Saturday but that she wanted Sundays off to go to church. (Dkt. 21, Ex. 1; Dkt. 21, Ex. 2 at ¶ 2.)[3] Despite this request, Plaintiff was sometimes scheduled to work afternoons and evenings on Sundays. (*E.g.*, Dkt. 21, Ex. 3 at 3.)

Plaintiff's first general manager scheduled Plaintiff for Sundays off, but still gave her over 30 hours each week. (Dkt. 21, Ex. 2 at ¶ 2.) In November 2009, that

---

[2] *See, e.g., Akines v. Shelby Cnty. Gov't*, 512 F. Supp. 2d 1138, 1147 (W.D. Tenn. 2007) (deeming the defendant's statement of undisputed material facts as having been admitted by the plaintiffs, where the plaintiffs failed to file a counter-statement of material facts, as directed by local rule).
[3] The parties provided employee schedules from August 30, 2010 through February 13, 2012. (Dkt. 18, Ex. F; Dkt. 21, Ex. 3.) This seventy-five-week period does not encompass Plaintiff's entire period of employment. According to the schedules that were provided, Plaintiff was scheduled for 16 Sundays during this period, never for a shift that commenced earlier than 3 pm. (*Id.*)

general manager resigned and then-shift manager Debbie Ereaux filled in as general manager until Defendants hired George Crimins in December 2009.[4] (*Id*. at ¶¶ 4-5.) Once Mr. Crimins was hired, Ms. Ereaux continued as the assistant manager. (*Id*. at ¶ 5.) During this period, Plaintiff was scheduled to work on Sundays. (*Id*. at ¶ 5.)

Friction soon developed between Plaintiff and her supervisors, Mr. Crimins and Ms. Ereaux. Mr. Crimins issued three critical performance write-ups about Plaintiff in March 2010. (Dkt. 21, Ex. 6 at 2-4.) Plaintiff received three additional write-ups in July, August, and September 2010 (*Id*. at 5-7.) In early September 2010, Plaintiff and at least two other co-workers filed complaint letters about Mr. Crimins with the district manager, Wadi Metti. (Dkt. 21, Ex. 5 at 2-9.) Mr. Metti requested that Plaintiff write the letter. (Dkt. 18 at 5.) Plaintiff and her co-workers reported issues with pay shortages, false performance write-ups, berating of employees in front of customers, and harassment. (Dkt. 21, Ex. 5 at 2-9.) Mr. Crimins was subsequently fired. (Dkt. 18 at 5.)

After the departure of Mr. Crimins, tension in the workplace nevertheless continued. In September 2010, Ms. Ereaux was promoted to general manager. (Dkt. 18, Ex. G at ¶ 4.) Plaintiff was scheduled to work on Sundays through the end of October 2010. (Dkt. 21, Ex. 3 at 3-15.) At that point, Defendants hired another employee to relieve Plaintiff of working on Sundays and most closing shifts. (Dkt. 21 at 8.)

---

[4] Defendants dispute that they employed Ms. Ereaux at this time. (Dkt. 18 at 7.) However, neither Ms. Ereaux's affidavit nor the record discloses when Ms. Ereaux was first hired and what her position was.

In mid-March 2011, Ms. Ereaux asked Plaintiff to volunteer to work one Sunday per month. (*Id*.) Plaintiff declined, reiterating her desire to attend church on Sundays and offering to write out her availability. (*Id*. at 8-9.) On March 14, 2011, Plaintiff noted her availability in the manager's log, requesting Sundays off and no closing shifts. (Dkt. 18, Ex. D.) On March 22, 2011, Ms. Ereaux issued Plaintiff a negative performance write-up for leaving the freezer door open resulting in a loss of product. (Dkt. 21, Ex. 6 at 8.) On March 29, 2011, Plaintiff complained to Mr. Metti that Ms. Ereaux was harassing her. (Dkt. 21 at 10.) For the week of March 28, Ms. Ereaux reduced Plaintiff's average hours from approximately thirty-three to twenty a week. (Dkt. 21, Ex. 3 at 43.)

At some point during or after April 2011, Plaintiff sent Mr. Metti a written complaint about Ms. Ereaux. (Dkt. 21, Ex. 5 at 10-13.)[5] In the letter, Plaintiff states that Ms. Ereaux discriminated against her, reduced her hours, scheduled her for Sundays, pressured her to work "off the clock," and generally "made Arby's into an unfair and hostile workplace." (*Id*. at 10-11.) Plaintiff filed a complaint with the United States Equal Employment Opportunity Commission ("EEOC") on July 12, 2011 for religious discrimination. (Dkt. 21, Ex. 7 at 2-4.) The complaint was mailed to Defendants on July 19, 2011. (*Id*. at 4.) Plaintiff was never scheduled to work another Sunday. (Dkt. 21, Ex. 3 at 64-96.) However, the week of July 18, 2011, Plaintiff's hours were further reduced to an average of approximately sixteen per week. (*Id*. at 64-84.)

---

[5] The letter is undated, but the body contains a mention of April 21. (Dkt. 21, Ex. 5 at 12.)

An unsuccessful EEOC mediation took place in January 2012. (Dkt. 21 at 9.) Beginning the week of December 5, 2011, Ms. Ereaux raised Plaintiff's hours to an average of approximately twenty-seven per week. (Dkt. 21, Ex. 3 at 86-96.) Plaintiff resigned on July 19, 2012. (Dkt. 18, Ex. A.)

## II.   ANALYSIS

Plaintiff has brought five counts against Defendants: (1) violation of the FLSA by not paying Plaintiff for the hours she worked "off the clock"; (2) violation of Title VII by subjecting Plaintiff to disparate treatment because of her religion and denying Plaintiff a religious accommodation; (3) violation of the ELCRA for the reasons given under Count II; (4) violation of Title VII for retaliating against Plaintiff for requesting a religious accommodation and for complaining about Defendants' discriminatory employment practices both internally and formally to the EEOC; and (5) violation of the ELCRA for the reasons given under Count IV.

## A. Legal Standard

Defendants have moved for summary judgment on all five of Plaintiff's claims, essentially arguing that Plaintiff has not offered and cannot offer sufficient evidence to show that she: is entitled to any additional wages, was denied a religious accommodation, or suffered discrimination and retaliation because of her religion. Summary judgment is proper when "the pleadings, deposits, answers to interrogatories, and admissions on file, together with exhibits, if any, show that there is no genuine issue as to any material fact." *See* Fed. R. Civ. P. 56(c). A fact is material only if it might affect the outcome of the case under the governing law. *See*

6

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). On a motion for summary judgment, the Court must view the evidence, and any reasonable inferences drawn from the evidence, in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Redding v. St. Edward*, 241 F.3d 530, 531 (6th Cir. 2001).

The moving party has the initial burden of demonstrating an absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party carries this burden, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587. The Court must determine whether the evidence presents a sufficient factual disagreement to require submission of the challenged claims to a jury or whether the moving party must prevail as a matter of law. *See Anderson*, 477 U.S. at 252 ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.").

Moreover, the trial court is not required to "search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989). Rather, the "nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 655 (6th Cir. 2001).

Here, there is clearly a dispute over certain material facts concerning Plaintiff's unpaid wages and Defendants' alleged retaliation, such that summary judgment on those claims would not be appropriate. However, Defendants are entitled to summary judgment with respect to Plaintiff's claims of religious discrimination.

## B. Claim for Unpaid Wages under the FLSA

Plaintiff alleges in Count I that Defendants did not compensate her for work she performed "off the clock" in violation of the FLSA, while Defendants counter that they did not have actual or constructive notice. The FLSA requires employers to pay covered employees at least the federal minimum wage for all hours worked. *See* 29 U.S.C. § 206. It is well established that "an FLSA plaintiff must prove by a preponderance of the evidence that he or she performed work for which he or she was not properly compensated." *White v. Baptist Memorial Health Care Corp.*, 699 F.3d 869, 873 (6th Cir. 2012) (quoting *Myers v. Copper Cellar Corp.*, 192 F.3d 546, 551 (6th Cir. 1999)).

Because an employer must have an opportunity to comply with the FLSA, the employee's burden is to establish that the employer "knows or has reason to believe that [the employee] is continuing to work." 29 C.F.R. § 785.11. An employer with a reasonable process in place for an employee to report uncompensated work time "is not liable for non-payment if the employee fails to follow the established process." *White*, 699 F.3d at 876-77. Such an employer could be liable, however, if there is evidence that the employer discouraged reporting or otherwise should have known that an employee was not being fairly compensated. *Id.*

8

When viewed in the light most favorable to the Plaintiff, a reasonable jury could find that Defendants were or should have been aware of Plaintiff working "off the clock" without compensation. Plaintiff has alleged that on several occasions she notified the shift manager, the general manager, or the district manager of time she worked without pay and of certain managers' alleged practice of requiring employees to work "off the clock." Plaintiff relies primarily on her own affidavit (Dkt. 21, Ex. 2) and her own answers to Defendants' interrogatories (Dkt. 21, Ex. 4 at 2) in support of these allegations. Defendants counter that one general manager to whom Plaintiff claims to have complained was not actually employed at the time Plaintiff alleges the conversation took place.[6] (Dkt. 18 at 7.) However, even if proven, this fact would account for only one of the six instances in which Plaintiff alleges that she worked without compensation, often at the direction of managerial staff, or complained to managerial staff about unpaid wages. (Dkt. 21, Ex. 4 at 2.)

Additionally, Plaintiff relies on a letter sent to the district manager in 2010 detailing a 9-hour pay shortage that she "let George known about" and noted in the manager's log as instructed by the district manager during a site visit. (Dkt. 21, Ex.

---

[6] Whether this conversation took place is yet another fact in dispute. Plaintiff claims to have complained to General Manager Debbie Ereaux in December 2009 about unpaid hours. (Dkt. 21 at 13.) According to Plaintiff, Ms. Ereaux, then a shift manager, was temporarily working as the general manager until a new general manager was hired. (Dkt. 21, Ex. 2 at ¶ 4.) Defendants respond that this conversation could not have happened in December 2009 because Ms. Ereaux was not employed by Defendants at that time. (Dkt. 18 at 7.) Defendants cite to Ms. Ereaux's affidavit in which Ms. Ereaux states that she became General Manager "on or about September 1, 2010" but Ms. Ereaux adds that she had been shift manager for "approximately seven months *prior to* taking over as General Manager." (Dkt. 18, Ex. G at ¶¶ 4, 6.) (emphasis added). Plaintiff also notes in a complaint letter that Ms. Ereaux was hired as general manager in September 2010. (Dkt. 21, Ex. 5 at 10.)  Neither this letter, nor Ms. Ereaux's affidavit, nor the record appear to disclose when Ms. Ereaux was first hired and what her position was at that time. On this record, it is just as reasonable to conclude that the disputed conversation merely took place at a different time than that which Plaintiff recalled, perhaps at a time when Ms. Ereaux was filling in as general manager or when she was still a shift manager, as to conclude that it never happened at all.

5 at 3.) The district manager acknowledges receiving this complaint in his affidavit. (Dkt. 18, Ex. E at ¶21.) Defendants dispute that Plaintiff raised the issue of unpaid wages before filing suit and further argue that the 2010 complaint letter, if it can be construed as notice at all, is insufficient. (Dkt. 18 at 7.)

Defendants also argue that they are not liable for any unpaid wages because Plaintiff allegedly failed to take advantage of existing mechanisms for reporting wage issues. (*Id.*) First, Defendants do not specify what complaint procedure Plaintiff ignored – other than to cite to some excerpts from the employee handbook. (Dkt. 18 at 3, 6-7.) Among these excerpts is one on compensation that simply instructs employees to "report any perceived errors" in pay to their managers, which Plaintiff alleges that she did on more than one occasion, but the handbook excerpts fail to provide detail on how the reporting should be done. (Dkt. 18, Ex. C at 5.) According to the record, Plaintiff did report at least one such error to her manager. In 2011, she apparently punched in thirty-eight minutes after she started working. (Dkt. 21, Ex. 9 at 2.) Plaintiff left her manager a note, asking that her timecard be adjusted to include the extra time worked.[7] (*Id.*). Whether Plaintiff's actions were sufficient to constitute compliance with the reporting instruction in the handbook and whether Plaintiff consistently reported such errors are genuine issues of material fact.

Second, contrary to defendant's argument, failure to follow required procedures is not an absolute bar to recovery. For example, as alleged here, a defendant may

---

[7] Josh, another employee, alerted Ms. Ereaux to a timecard error in a similar manner. He left Ms. Ereaux an undated note stating that he arrived at 4 "but didn't clock in till 5" and asked Ms. Ereaux to "fix that." (Dkt. 18, Ex. D.)

not rest on a plaintiff's failure to follow reporting procedures if it is alleged that a defendant was "otherwise notified of the [plaintiff's] unreported work." *White*, 699 F.3d at 876. Plaintiff has not only alleged that she worked "off the clock" and informed her general and district managers, but also that all these incidents were willful. (Dkt. 1 at ¶ 29.) Therefore, her claim is not barred and it still falls within the applicable three-year statute of limitations despite Defendants' argument to the contrary. 29 U.S.C. § 255(a). Consequently, the Court also declines to find the claim precluded by the equitable principle of laches.

In light of the alleged facts, the Court cannot conclude that Plaintiff's version of the events is "so utterly discredited by the record that no reasonable jury could believe it." *Coble v. City of White House, Tenn.*, 634 F.3d 865, 870 (6th Cir. 2011); *see also Morrison*, 583 F.3d at 408. The record discloses sufficient issues of material fact on the issue of whether Plaintiff worked "off the clock" hours and attempted to notify management about them.  Consequently, Defendants' motion for summary judgment must be denied as to Plaintiff's claim for unpaid wages under the FLSA.

## C. Plaintiff's Religious Discrimination Claims under Title VII and the ELCRA

Plaintiff alleges in Count II that Defendants violated Title VII when they discriminated against her on the basis of her faith by treating her differently than her coworkers and by denying her religious accommodation request to have

Sundays off to attend church. (Dkt. 1 at ¶¶ 35-36.) Plaintiff makes the same allegations in Count III under the ELCRA. (*Id.* at ¶¶ 42-43.)[8]

### a. Disparate Treatment Claim

Plaintiff asserts claims of religious discrimination under the ELCRA and Title VII, alleging disparate treatment. (*Id.* at ¶¶ 35, 42.) Such claims brought under the ELCRA are analyzed using the same framework applicable under Title VII. *Humenny v. Genex Corp.*, 390 F.3d 901, 906 (6th Cir. 2004). To successfully assert a claim of religious discrimination, Plaintiff must present direct evidence of discrimination or a prima facie case based on circumstantial evidence subject to the *McDonnell Douglas* burden-shifting framework. *Tepper v. Potter*, 505 F.3d 508, 515 (6th Cir. 2007). Under this framework, the burden of production shifts between the parties but the burden of persuasion always remains with the Plaintiff. *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 392 (6th Cir. 2008).

In this case, Plaintiff does not claim to offer any direct evidence of discrimination. (*See* Dkt. 21 at 14.) As a result, Plaintiff bears the initial but "not onerous" burden of establishing a prima facie case by a preponderance of the evidence by showing (1) that she was a member of a protected class, (2) that she

---

[8] In their motion for summary judgment, Defendants construed Plaintiff's complaint to include a hostile work environment claim on the basis of religion under Title VII. (Dkt. 18 at 12.) However, Plaintiff did not include such a count in her complaint. Although Plaintiff alleged that Defendants created a "hostile and retaliatory environment" and a "hostile environment," these factual allegations were framed within the context of a retaliation claim. (*See* Dkt. 1 at ¶¶ 13, 19.) Even if the Court were to construe Plaintiff's allegations as stating a separate hostile work environment claim, Plaintiff would be unable to establish a prima facie case. Such a case requires a showing that Plaintiff was subjected to unwelcomed harassment on the basis of her protected status. *Hafford v. Seidner*, 183 F.3d 506, 512 (6th Cir. 1999). As discussed in this opinion, Plaintiff has not presented any evidence that anyone ever made even an innocuous comment about her faith, let alone harassed her for it.

experienced an adverse employment action, (3) that she was qualified for the position, and (4) that she was replaced by a person outside of the protected class or that she was treated differently than similarly situated employees. *Baxter,* 533 F.3d at 391 (citing *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). If Plaintiff succeeds, the burden of production "then shifts to the employer to offer a legitimate, non-discriminatory explanation for its actions; finally, the burden shifts back to the plaintiff to show pretext." *Chattman v. Toho Tenax Am.*, *Inc.*, 686 F.3d 339, 347 (6th Cir. 2012).

Considering these elements, it is clear that Plaintiff cannot establish a prima facie case. Defendants do not dispute that Plaintiff is a member of a protected class and was qualified for her positions. (Dkt. 18 at 10.) Although Plaintiff has, under the standard for this motion, offered evidence that she suffered an adverse employment action in the form of reduced hours in comparison to her co-workers' hours, she does not establish whether or how those co-workers were similarly situated, or even what their availability was, making any meaningful comparison with co-workers' schedules difficult. (Dkt. 21 at 5; Dkt. 21, Ex. 5 at 10-13.) Plaintiff's hours were markedly reduced, but the reduction in her hours corresponds *both* with her refusal to work closing shifts as well as her reiteration of her request to be allowed Sundays off.

Defendants argue that the reduction of hours was in response to Plaintiff's voluntary request for day shifts on weekdays and Saturdays (Dkt. 18 at 11), which Plaintiff acknowledges submitting. (Dkt. 21, Ex. 5 at 12.) In addition, Defendants

argue that it would create impractical scheduling difficulties to continue to schedule Plaintiff for the same number of hours given her refusal to work Sundays or nights. (Dkt. 18 at 11.) Scheduling Plaintiff for the same number of hours would, according to Defendants, require that other employees be scheduled for shorter shifts on a regular basis to their detriment. (*Id.*) These explanations are reasonable.

Ultimately, Plaintiff has offered *no evidence* that the motivation for any adverse employment action or alleged harassment was her religion or her religious activities. Crucial to the discrimination inquiry under Title VII is whether Plaintiff establishes "that the defendant had a discriminatory intent or motive for taking a job-related action." *Chattman,* 686 F.3d at 346 (quoting *Ricci v. DeStefano*, 557 U.S. 577 (2009)). Plaintiff does not allege that any individual ever made derogatory or even innocuous comments directed toward her faith, questioned the sincerity of her beliefs, or harassed, disciplined or singled her out in any way because she is a Baptist. (Dkt. 21, Ex. 4 at 2-4.) On these facts, Plaintiff may have shown that she was singled out for a reduced schedule, but not in any way because of her religious beliefs.

There is no evidence to support a claim that religious discrimination was more likely than not the basis of any job-related action over other more reasonable explanations. Under *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986), the Court finds that "reasonable jurors" could not "find by a preponderance of the evidence that the plaintiff is entitled to a verdict"—there is no evidence upon which a jury could properly find a verdict for Plaintiff on this claim.

14

Without finding a prima facie case, the Court does not need to reach whether Plaintiff made a showing of pretext. Defendants' motion as to Plaintiff's two claims of religious discrimination is granted.

### b. Religious Accommodation Claim

#### i. Under Title VII

Plaintiff also asserts a religious accommodation claim under Title VII in Count II of her complaint. (Dkt. 1 at ¶ 36). While discrimination cases follow the *McDonnell Douglas* framework, accommodation cases follow the framework first announced  in *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 97 (1977). To successfully assert her accommodation claim, Plaintiff must first establish a prima facie case by showing that (1) she holds a sincere religious belief that conflicts with an employment requirement; (2) she has informed the employer about the conflicts; and (3) she was discharged or disciplined for failing to comply with the conflicting employment requirement. *Tepper*, 505 F.3d at 514 (quoting *Smith v. Pyro Mining Co.*, 827 F.2d 1081, 1085 (6th Cir. 1987)). If Plaintiff can establish a prima facie case, Defendants will have the burden to show that they could not reasonably accommodate Plaintiff without bearing more than a *de minimis* cost. *Tepper,* 505 F.3d at 514.

Plaintiff cannot satisfy the third prong of her prima facie case, that she was discharged or disciplined because of failing to comply with an employment requirement that conflicted with her religious belief, even when the facts are viewed in the light most favorable to her. Though it is not clear whether working on

15

Sundays was an actual "employment requirement" in this case, Plaintiff satisfies the first prong as neither Defendants nor the Court question the sincerity of Plaintiff's religious belief or the fact that she was occasionally scheduled to work on Sundays in conflict with her request. (Dkt. 18 at 4, 13.) Plaintiff's written requests for Sundays off do not specify that the requests were made pursuant to a religious conviction (Dkt. 21, Ex. 1), but Plaintiff satisfies the second prong because Defendants acknowledged in a hearing on February 10, 2014 that they were aware of Plaintiff's desire to go to church. (Tr. at 3:1-10.) There is insufficient evidence, however, for a reasonable jury to find that Plaintiff was discharged or disciplined for requesting Sundays off to attend religious services.

### 1. Discipline

It is not entirely clear from the pleadings exactly what discipline Plaintiff alleges she suffered for requesting her religious accommodation. In her response, Plaintiff directs the Court to the discussion of her prima facie case within the discrimination context, but that analysis requires evidence of an "adverse employment action" and is thus not directly analogous to the "discharged or disciplined" inquiry applicable to the accommodation context. In fact, this Circuit has declined to find that "discharged or disciplined" can be proven by a showing of any possible adverse employment action. *Reed v. Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am.*, 569 F.3d 576, 580-81 (6th Cir. 2009).

Plaintiff was written up on numerous occasions for failing to follow proper closing procedures (Dkt. 18, Ex. B) and had to return her restaurant keys when she

16

informed her general manager that she could no longer work closing shifts. (Dkt. 21 at 9.) However, Plaintiff was also promoted to shift manager in February 2010. (Dkt. 21, Ex. 2, ¶ 7.) Plaintiff does not provide evidence to contest Defendants' assertion that she retained her title of shift manager and corresponding pay grade until she resigned. (*See* Dkt. 21, Ex. 2; Dkt. 21, Ex. 6; Dkt. 18, Ex. E at ¶¶ 7-9.) Furthermore, Plaintiff does not assert that she was ever disciplined either for requesting Sundays off or for failing to report to work on those Sundays on which she was scheduled. In fact, according to the schedules Plaintiff submitted, she was never scheduled to work on Sunday after her first EEOC complaint was mailed to defendants on July 19, 2011. (Dkt. 21, Ex. 3 at 63-96; Dkt. 21 at 8.) The last Sunday Plaintiff worked was July 17, 2011; if her religious accommodation request was being ignored before, it was apparently honored afterward. (Dkt. 21, Ex. 3 at 63.)

While the Court recognizes that Plaintiff claims her hours were reduced and that this caused financial strain (Dkt. 21 at 10), in this Circuit, "more than loss of pay is required to demonstrate discipline or discharge." *Tepper*, 505 F.3d at 514 (holding that a reduction in annual pay resulting from not working on Saturdays is insufficient to demonstrate discipline or discharge). There is no evidence that Defendants reduced Plaintiff's hours or disciplined her in any way because of her religion or her religious activities. In addition, Plaintiff's request was apparently honored consistently after the EEOC complaint was filed. Without more, a reasonable jury could not find that Plaintiff was disciplined for requesting and insisting on her religious accommodation.

17

## 2.  Discharge

In lieu of discipline, Plaintiff can assert a religious accommodation claim under Title VII by showing she was discharged for failing to comply with the conflicting employment requirement. However, Plaintiff was not discharged; she voluntarily resigned. (Dkt. 18, Ex. A.) To remedy this potential defect in her case, Plaintiff alleges that she was constructively discharged because of her general manager's "harassment and consistent under scheduling." (Dkt. 21 at 15.)

Constructive discharge is found when the employer deliberately creates working conditions that are so intolerable that the employee is forced to resign. *Laster v. City of Kalamazoo*, 746 F.3d 714, 727 (6th Cir. 2014). To establish constructive discharge, Plaintiff must produce evidence to show that (1) Defendants deliberately created intolerable working conditions, as perceived by a reasonable person in Plaintiff's shoes, (2) with the intention of forcing Plaintiff to quit. *Id.* at 727-28. In this Circuit, the following factors are relevant to determining whether the first prong of the inquiry has been satisfied, alone or in combination:

> (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement or continued employment on terms less favorable than the employee's former status.

*Id.* at 728 (citing *Logan v. Denny's, Inc.*, 259 F.3d 558, 569 (6th Cir. 2001)).

Considering these factors, Plaintiff's allegations fail to show that Defendants created "intolerable working conditions;" they do not carry the gravity required to create a jury case of constructive discharge. Despite obvious friction between

Plaintiff and at least one of her managers, Plaintiff's own managerial title and pay apparently remained the same. (*See* Dkt. 21, Ex. 2; Dkt. 21, Ex. 6; Dkt. 18, Ex. E at ¶¶ 7-9.) Plaintiff does not assert that her actual job responsibilities were reduced, that she was reassigned to work under a younger supervisor or to do degrading work, or that she was offered any less attractive terms for continued employment. (*See* Dkt. 1; Dkt. 21, Ex. 2.)  She alleges being given fewer hours.

Plaintiff's claim unsuccessfully rests on the sixth factor ("badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation"). But Plaintiff has not made any factual allegations that her workplace was characterized by badgering, harassment, or humiliation. Plaintiff alleges, without much evidence or specificity, that one particular general manager was "verbally abusive and harassing" after Plaintiff complained to the district manager about being under-scheduled (Dkt. 21 at 8-9.) It is not clear what specific incidents Plaintiff considers to be examples of this behavior. Plaintiff alleges generally that her general manager gossiped to other employees about Plaintiff's husband's medical condition, sent an unspecific number of "abusive and sexually graphic texts," threatened to write Plaintiff up, and did not call Plaintiff to fill in shifts. (*Id*.) However, Plaintiff does not provide much detail regarding when or how frequently these incidents occurred, their severity, or what was said to whom. (Dkt. 21, Ex. 2 at ¶ 29.)

Plaintiff has presented evidence that her manager subjected her to performance write-ups and criticism, but criticism in performance evaluations has

been held insufficient in cases of constructive discharge. *E.g.*, *Keller v. Allstate Ins. Co.*, 146 F.App'x 764, 766 (6th Cir. 2005) (negative performance reviews do not constitute objectively intolerable conditions, even if unfair). Furthermore, "a feeling of being unfairly criticized, or difficult or unpleasant working conditions are not so intolerable as to compel a reasonable person to resign." *Id.* (quoting *Smith v. Henderson*, 376 F.3d 529, 534 (6th Cir.2004)).

Ultimately, Plaintiff has not presented sufficient evidence to show that Defendants *deliberately* created conditions so intolerable that were *intended* to force Plaintiff to quit. The test for constructive discharge "sets a high bar," as the law generally expects employees to remain on the job while pursuing relief from harassment. *McKelvey v. Sec'y of U.S. Army*, 450 F. App'x 532, 535 (6th Cir. 2011). Although Plaintiff may have suffered retaliation, in a case of constructive discharge because of discriminatory harassment, this Circuit requires evidence of an environment even more egregious than the high standard for showing a hostile work environment. *E.g.*, *Laster*, 746 F.3d at 728 (6th Cir. 2014); *Moore v. KUKA Welding Sys. & Robot Corp.*, 171 F.3d 1073, 1080 (6th Cir. 1999). Plaintiff has not met this high bar.

### ii.  Under the ELCRA

Plaintiff also asserts a religious accommodation claim under the ELCRA. (Dkt. 1 at ¶ 43). Unlike Title VII, "the ELCRA does not include an affirmative duty to accommodate an employee's religious beliefs." *Ureche v. Home Depot U.S.A., Inc.*, No. 06-11017, 2006 WL 3825070 at *4 (E.D. Mich. Dec. 26, 2006). Therefore,

20

Plaintiff's religious accommodation claim under the ELCRA fails as a matter of law and Defendants' motion for summary judgment on this claim must be granted.

Because Plaintiff has failed to make out a prima facie case, there is no need to consider whether Defendants' accommodation was reasonable or the cost of accommodation was *de minimus*. Defendants' motion for summary judgment as to Plaintiff's religious accommodation claims under Title VII and the ELCRA is granted.

## D. Retaliation Claims under Title VII and the ELCRA

In Count IV, Plaintiff alleges that Defendants violated Title VII by retaliating against her for complaining internally about pay shortages, under scheduling and harassment, and externally to the EEOC about religious discrimination and denial of a religious accommodation. Plaintiff makes the same claims in Count V under the ELCRA.

Again, the ELCRA analysis is identical to the analysis under Title VII. *Wasek v. Arrow Energy Servs., Inc.*, 682 F.3d 463, 472 (6th Cir. 2012). Title VII prohibits discriminating against an employee who has engaged in conduct protected under the Act. *See* 42 U.S.C. § 2000e–3(a). Such protected conduct includes the filing of formal discrimination charges with the EEOC as well as complaints to management and other informal protests of discriminatory practices. *See Hill v. Air Tran Airways*, 416 Fed.Appx. 494, 498 (6th Cir.2011); *Shepard v. Uniboring*, 72 Fed.Appx. 333, 336 (6th Cir.2003). Thus, both Plaintiff's internal complaints to her

general and district managers and the charges she filed with the EEOC are protected activities.

Like a Title VII discrimination claim, a Title VII retaliation claim can be established by offering direct evidence of retaliation or circumstantial evidence that would support an inference of retaliation. *Laster*, 746 F.3d at 730 (citing *Imwalle v. Reliance Medical Products*, Inc., 515 F.3d 531, 538 (6th Cir.2008)). In this case, Plaintiff has offered circumstantial evidence.  Consequently, Plaintiff's retaliation claim will be analyzed under the aforementioned burden-shifting framework of *McDonnell Douglas*.

To establish a prima facie case of retaliation under Title VII, Plaintiff must demonstrate that: (1) she engaged in activity protected by Title VII; (2) her exercise of such protected activity was known by Defendants; (3) thereafter, Defendants took an action that was "materially adverse" to Plaintiff; and (4) a causal connection existed between the protected activity and the materially adverse action." *Id*. (quoting *Jones v. Johanns*, 264 F.App'x. 463, 466 (6th Cir.2007)). Title VII retaliation claims "must be proved according to traditional principles of but-for causation," which "requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013).

The "materially adverse action" element of a Title VII retaliation claim is "less onerous" to establish than the "adverse employment action" element of a Title VII discrimination claim. *Laster*, 746 F.3d at 731. For an action to be materially

adverse, Plaintiff need only show "that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). Therefore, the fact that Plaintiff cannot meet the standard for constructive discharge is not necessarily dispositive of Plaintiff's Title VII retaliation claim "where Plaintiff has provided evidence of other adverse actions which raise a genuine issue of fact as to whether or not they satisfy this standard." *Laster*, 746 F.3d at 719.

Plaintiff has alleged, and provided adequate evidence to establish, an issue of material fact regarding the alleged retaliation. The schedules both parties submitted show, as Plaintiff claims, that her general manager cut her hours *immediately* after Plaintiff reiterated her request for Sundays and nights off and complained to the district manager, and again *immediately* after her first EEOC complaint was mailed to Defendants. (Dkt. 21, Ex. 3.) The work schedules show that through March 21, 2011, Plaintiff worked approximately 33 hours per week on average. (*Id.*) On March 14, 2011, Plaintiff claims that her general manager asked her to work one Sunday a month and Plaintiff refused, restating her request to have Sundays and nights off. (Dkt. 21 at 4.) On March 29, 2011, Plaintiff complained to the district manager about her general manager's "scheduling abuse" and performance write-ups. (Dkt. 21 at 6.) Beginning the week of March 28, 2011,

Plaintiff's hours were drastically reduced to an average of approximately 20 per week. (Dkt. 21, Ex. 3.)

Plaintiff filed her first EEOC complaint on July 12, 2011. (Dkt. 21 at 6-8.) Plaintiff complained to the EEOC about being scheduled to work on Sundays and closing shifts in conflict with her request. (Dkt. 21, Ex. 7 at 2.) Although the record does not clarify precisely when Defendants became aware that Plaintiff had complained to the EEOC, it is not unreasonable from the evidence in the record to draw an inference that Defendants knew prior to receiving the complaint itself because, beginning the following week on July 18, 2011, the general manager further reduced Plaintiff's weekly hours from an average of approximately 20 to about 16. (Dkt. 21, Ex. 3.)

Defendants argue that Plaintiff's hours were reduced because she voluntarily limited her availability on March 14, 2011. (Dkt. 18 at 3-4.) That may explain the initial reduction in Plaintiff's hours, but not the second. This reason also does not explain why, with the EEOC mediation pending in January 2012, the general manager suddenly boosted Plaintiff to a 27-hour work week beginning on December 5, 2011. (Dkt. 21 at 9; Dkt. 21, Ex. 3.)

In this Circuit, "[w]here an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation." *Montell v. Diversified Clinical Servs.*, Inc., 757 F.3d 497, 505 (6th Cir. 2014) (quoting *Mickey v. Zeidler*

*Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir.2008)). This is because "it is nearly impossible to come up with other evidence that the adverse employment action was retaliatory where the adverse action comes directly on the heels of the protected activity." *Montell*, 757 F.3d at 506.

Plaintiff, however, is not relying solely on the temporal link between her complaints and the reduction of her weekly hours. Plaintiff also alleges that the general manager subjected her to heightened scrutiny and verbal abuse after she complained. (Dkt. 21 at 8.) Defendants do not offer any evidence to refute Plaintiff's assertions. In any event, the temporal proximity evident in this case is sufficiently close to satisfy causation for the purpose of establishing a prima facie case.

Given the temporal proximity between the Plaintiff's complaints and the reduction in hours, a reasonable jury could infer that Plaintiff suffered materially adverse and retaliatory actions, even if they do not meet the high standard required for constructive discharge. In addition, Defendants have not produced evidence of a non-retaliatory reason explaining Plaintiff's second reduction in hours or refuting Plaintiff's assertions of increased abuse and harassment. Therefore, summary judgment is denied as to Plaintiff's claims of retaliation under Title VII and the ELCRA.

Plaintiff has raised a genuine issue of material fact as to whether or not Defendants retaliated against her in violation of Title VII and the ELCRA. Therefore, Defendants motion as to Plaintiff's retaliation claims, Counts IV and V, are denied.

## III.   CONCLUSION

For the reasons stated above, Defendants' Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART.** Specifically, Defendants' motion is **GRANTED** as to Counts II and III because Plaintiff has submitted no evidence in support of her claim that Defendants' employment decisions were motivated or influenced by Plaintiff's religion. As to Counts I, IV, and V, Defendants' motion is **DENIED** because there are genuine issues of material fact.

**SO ORDERED**.

s/Terrence G. Berg
TERRENCE G. BERG
UNITED STATES DISTRICT JUDGE

Dated:  September 29, 2014

### Certificate of Service

I hereby certify that this Order was electronically submitted on September 29, 2014, using the CM/ECF system, which will send notification to each party.

By:  s/A. Chubb
Case Manager